Citation Nr: 1434273 
Decision Date: 07/31/14 Archive Date: 08/04/14

DOCKET NO. 11-28 444 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Winston-Salem, North Carolina


THE ISSUES

1. Entitlement to an initial schedular evaluation in excess of 20 percent for service-connected rotator cuff syndrome of the left (minor) shoulder. 

2. Entitlement to an initial schedular evaluation in excess of 20 percent for the service-connected acromioclavicular joint (AC) separation of the left (minor) shoulder. 

3. Entitlement to a rating in excess of 20 percent for rotator cuff syndrome of the left (minor) shoulder on an extra-scheduler basis pursuant to 38 C.F.R. § 3.321(b)(1).

4. Entitlement to a rating in excess of 20 percent for AC joint separation of the left (minor) shoulder on an extra-scheduler basis pursuant to 38 C.F.R. § 3.321(b)(1).


REPRESENTATION

Appellant represented by: North Carolina Division of Veterans Affairs
ATTORNEY FOR THE BOARD

A.M. Ivory, Counsel


INTRODUCTION

The Veteran served on active duty from September 1988 to November 2009. 

This claim comes before the Board of Veterans' Appeals (Board) from a January 2011 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Winston-Salem, North Carolina. The RO granted service connection for multiple disabilities asserted in a VA Quick Start initiative claim that the Veteran filed while on active duty. This rating decision included a grant of service-connection for left shoulder AC joint separation with an initial rating assigned of 10 percent effective December 1, 2009. 

In November 2013, the Board remanded the Veteran's claim for further development. A March 2014 rating decision recharacterized the Veteran's service-connected disability to rotator cuff syndrome and granted the Veteran a higher initial rating of 20 percent effective December 1, 2009. The RO also granted the Veteran a separate rating of 20 percent for AC joint separation effective December 1, 2009. Inasmuch as higher schedular ratings are available, and inasmuch as a claimant is presumed to be seeking maximum available benefit for a given disability, the claim for higher ratings, as reflected on the title page, remains viable on appeal. See AB v. Brown, 6 Vet. App. 35, 38 (1993). 

After a careful review of the Veteran's claims file, the Board finds that the issues of entitlement to a higher ratings based on extra-scheduler basis have been raised and those issues are now listed on the title page. 

At the March 2014 VA examination, the Veteran stated that he had a right shoulder disability that was secondary to his service-connected left shoulder disabilities. This has not been adjudicated by the Agency of Original Jurisdiction (AOJ). Therefore, the Board does not have jurisdiction over it and it is referred to the AOJ for appropriate action. 38 C.F.R. § 19.9(b) (2013). In addition, since April 2014, the Veteran has been submitting evidence for a claim of entitlement to service connection for posttraumatic stress disorder (PTSD); however, the Veteran is already service-connected for PTSD and assigned a 70 percent disability rating. Therefore, the Board is referring that issue to the AOJ to determine if the Veteran is filing a new claim for service connection or is requesting a higher disability rating. 

This appeal was processed using the Veterans Benefit Management System (VBMS) paperless, electronic claims processing system. In addition to the VBMS file, there is also an electronic (Virtual VA) paperless claims file that includes a December 2012 RO letter that granted a total disability rating based on individual unemployability due to service-connected disabilities (TDIU), effective December 7, 2011. The Board notes that there are VA treatment records that have not been reviewed by the AOJ and that are not accompanied by a waiver of AOJ review; however, the Board finds that they are either not relevant or are duplicative of evidence of record. Thus, the Veteran is not prejudiced from the Board proceeding with adjudication of his claims. 

The issue of entitlement to higher ratings on an extra-scheduler basis is REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. The Veteran's service-connected rotator cuff syndrome of the left (minor) shoulder has not manifested by motion limited to 25 degrees from the side even when considering functional impairment on use.

2. The Veteran's service-connected AC joint separation of the left shoulder has been manifested by nonunion with loose movement of the clavicle or scapula. 


CONCLUSIONS OF LAW

1. The criteria for an initial schedular rating in excess of 20 percent for service-connected rotator cuff syndrome of the left shoulder, minor shoulder, have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2002); 38 C.F.R. §§ 3.321, 4.1, 4.2, 4.3, 4.7, 4.10, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes (DCs) 5200, 5201, 5202 (2013).

2. The criteria for an initial schedular rating in excess of 20 percent for service-connected AC joint separation of the left shoulder have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2002); 38 C.F.R. §§ 3.321, 4.1, 4.2, 4.3, 4.7, 4.10, 4.40, 4.45, 4.59, 4.71a, DC 5203 (2013).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duty to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations impose obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107 (West 2002 & Supp. 2012); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2013). Proper VCAA notice must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b)(1).

In Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006), the United States Court of Appeals for Veterans Claims (Court) held that the VCAA notice requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) apply to all five elements of a service connection claim. Those five elements include: 1) Veteran status; 2) existence of a disability; 3) a connection between the Veteran's service and the disability; 4) degree of disability; and 5) effective date of the disability.

In Pelegrini v. Principi, 18 Vet. App. 112 (2004), the Court held that a VCAA notice, as required by 38 U.S.C.A. § 5103(a), must be provided to a claimant before the initial unfavorable AOJ decision on the claim for VA benefits.

The Board observes that the Veteran has appealed with respect to the propriety of the initially assigned rating for his service-connected left shoulder disabilities from the original grant of service connection. VA's General Counsel has held that no VCAA notice is required for such downstream issues. VAOPGCPREC 8-2003, 69 Fed. Reg. 25180 (May 5, 2004). In addition, the Board notes that the Court held that "the statutory scheme contemplates that once a decision awarding service connection, a disability rating, and an effective date has been made, § 5103(a) notice has served its purpose, and its application is no longer required because the claim has already been substantiated." Dingess, 19 Vet. App. at 490.

In this case, the Veteran's claim for service connection for AC joint separation of the left shoulder was granted and an initial rating was assigned in the January 2011 rating decision on appeal. Therefore, as the Veteran has appealed with respect to the initially assigned rating, no additional 38 U.S.C.A. § 5103(a) notice is required because the purpose that the notice is intended to serve has been fulfilled. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007). 

Relevant to the duty to assist, the Veteran's VA treatment records and private treatment records have been obtained and considered. The Board notes that the Veteran was also afforded a VA examination in June 2010 but, in November 2013, the Board found that this VA examination was not adequate for rating purposes and remanded for a new VA examination. The Board finds that the Veteran's subsequent March 2014 VA examination is adequate for rating purposes because it conveyed pertinent medical findings stated in terms conforming to the applicable rating criteria. Massey v. Brown, 7 Vet. App. 204 (1994). 

In November 2013, the Board remanded the Veteran's claim for further development; specifically, to obtain any outstanding VA and private treatment records and to afford the Veteran a VA examination. In December 2013, the AOJ sent the Veteran a letter requesting that he identify all treatment providers and provide an authorization form, if necessary, so as to allow VA to obtain such records, but the Veteran only responded with VA providers and these records were obtained and reviewed, as noted in the March 2014 supplemental statement of the case (SSOC). The Veteran was afforded a VA examination in March 2014 which has been deemed adequate for rating purposes. As the requested development has been completed, no further action to ensure compliance with the remand directive is required. See Stegall v. West, 11 Vet. App. 268 (1998); Dyment v. West, 13 Vet. App. 141, 146-47 (1999). 

Thus, the Board finds that VA has fully satisfied the duty to assist. In the circumstances of this case, additional efforts to assist or notify the Veteran in accordance with the VCAA would serve no useful purpose. See Soyini v. Derwinski, 1 Vet. App. 540, 546 (1991) (strict adherence to requirements of the law does not dictate an unquestioning, blind adherence in the face of overwhelming evidence in support of the result in a particular case; such adherence would result in unnecessarily imposing additional burdens on VA with no benefit flowing to the appellant); Sabonis v. Brown, 6 Vet. App. 426, 430 (1994) (remands which would only result in unnecessarily imposing additional burdens on VA with no benefit flowing to the appellant are to be avoided). VA has satisfied its duty to inform and assist the Veteran at every stage in this case, at least insofar as any errors committed were not harmful to the essential fairness of the proceeding. Therefore, he will not be prejudiced as a result of the Board proceeding to the merits of his claims herein decided.

II. Analysis

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities, found in 38 C.F.R., Part 4. The Rating Schedule is primarily a guide in the evaluation of disability resulting from all types of diseases and injuries encountered as a result of or incident to military service. The ratings are intended to compensate, as far as can practicably be determined, the average impairment of earning capacity resulting from such diseases and injuries and their residual conditions in civilian occupations. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. 

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise the lower rating will be assigned. 38 C.F.R. § 4.7. All benefit of the doubt will be resolved in the Veteran's favor. 38 C.F.R. § 4.3. 

Where the evidence contains factual findings that demonstrate distinct time periods in which the service-connected disability exhibits symptoms that would warrant different evaluations during the course of the appeal, the assignment of staged ratings is appropriate. Fenderson v. West, 12 Vet. App. 119 (1999).

Disability of the musculoskeletal system is primarily the inability, due to damage or infection in the parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination, and endurance. It is essential that the examination on which ratings are based adequately portray the anatomical damage and the functional loss with respect to all of these elements. In evaluating disabilities of the musculoskeletal system, it is necessary to consider, along with the schedular criteria, functional loss due to flare-ups of pain, fatigability, incoordination, pain on movement, and weakness. DeLuca v. Brown, 8 Vet. App. 202 (1995).

Functional loss may be due to absence of part, or all, of the necessary bones, joints and muscles, or associated structures, or to deformity, adhesions, defective enervation, or other pathology, or it may be due to pain, supported by adequate pathology and evidenced by visible behavior of the claimant undertaking the motion. Weakness is as important as limitation of motion, and a part that becomes painful on use must be regarded as seriously disabled. 38 C.F.R. §§ 4.10, 4.40, 4.45. The Court has held that VA must analyze the evidence of pain, weakened movement, excess fatigability, or incoordination and determine the level of associated functional loss under 38 C.F.R. § 4.40, which requires VA to regard as "seriously disabled" any part of the musculoskeletal system that becomes painful on use. See DeLuca, 8 Vet. App. 202 (1995). In Mitchell v. Shinseki, 25 Vet. App. 32 (2011), the Court held that, although pain may cause a functional loss, "pain itself does not rise to the level of functional loss as contemplated by VA regulations applicable to the musculoskeletal system." Rather, pain may result in functional loss, but only if it limits the ability "to perform the normal working movements of the body with normal excursion, strength, speed, coordination, or endurance." Id., quoting 38 C.F.R. § 4.40. 

Furthermore, the intent of the rating schedule is to recognize painful motion with joint or periarticular pathology as productive of disability. Thus, actually painful, unstable, or malaligned joints, due to healed injury, are entitled to at least the minimum compensable rating for the joint. The joints should be tested for pain on both active and passive motion, in weight-bearing and nonweight-bearing and, if possible, with the range of the opposite undamaged joint. 38 C.F.R. § 4.59. In Burton v. Shinseki, 25 Vet. App. 1, 5 (2011), the Court found that, when 38 C.F.R. § 4.59 is raised by the claimant or reasonably raised by the record, even in non-arthritis context, the Board should address its applicability. 

Under DC 5003, degenerative arthritis, when established by x-ray findings, will be rated on the basis of limitation of motion under the appropriate DCs for the specific joint or joints involved. When the limitation of motion of the specific joint or joints involved is noncompensable under the appropriate DCs, a rating of 10 percent is for application for each such major joint or group of minor joints affected by limitation of motion to be combined, not added under DC 5003. Limitation of motion must be objectively confirmed by findings such as swelling, muscle spasm or satisfactory evidence of painful motion. 38 C.F.R. § 4.71a, DC 5003.

Descriptive words such as "slight," "moderate" and "severe" are not defined in the Rating Schedule. Rather than applying a mechanical formula, the Board must evaluate all of the evidence to the end that its decisions are "equitable and just." 38 C.F.R. § 4.6. The use of descriptive terminology by medical examiners, although an element of evidence to be considered by the Board, is not dispositive of an issue. All evidence must be evaluated in arriving at a decision. 38 U.S.C.A. § 7104(a); 38 C.F.R. §§ 4.2, 4.6.

The January 2011 rating decision granted the Veteran service connection for left shoulder AC joint separation with an initial rating assigned of 10 percent effective December 1, 2009, under 38 C.F.R. § 4.71a, DC 5201. A March 2014 rating decision recharacterized the Veteran's service-connected disability to rotator cuff syndrome and granted the Veteran a higher initial rating of 20 percent effective December 1, 2009, under 38 C.F.R. § 4.71a, DC 5201. The RO also granted the Veteran a separate rating of 20 percent for AC joint separation effective December 1, 2009, under 38 C.F.R. § 4.71a, DC 5203. The Board notes that a careful review of the Veteran's medical files reveals that his left shoulder is his minor shoulder. 

Under 38 C.F.R. § 4.71a, DC 5201, limitation of an arm at the shoulder level warrants a 20 evaluation whether it is the major or minor extremity. When motion is limited to midway between the side and shoulder level, a 20 percent evaluation is warranted for the major extremity. When motion is limited to 25 degrees from the side, a 30 percent evaluation is warranted for the major extremity. 

DC 5203 provides ratings for other impairment of the clavicle or scapula. Malunion of the clavicle or scapula is rated as 10 percent for the minor shoulder. Nonunion of the clavicle or scapula without loose movement is rated as 10 percent for the minor shoulder; nonunion of the clavicle or scapula with loose movement is rated as 20 percent for the minor shoulder. Dislocation of the clavicle or scapula with loose movement is rated as 20 percent for the minor shoulder. DC 5203 provides an alternative rating based on impairment of function of the contiguous joint. 38 C.F.R. § 4.71a. 

Normal flexion (forward elevation of the arm) and normal abduction (movement of the arm away from the side) of the shoulder are to 180 degrees. Normal internal rotation and external rotations of the shoulder are to 90 degrees. 38 C.F.R. § 4.71, Plate 1. 

Historically, the Veteran incurred traumatic injury to the left shoulder in 2005. He described symptoms of left shoulder pain and intermittent popping/clicking sensation. His clinical assessments included left shoulder impingement (supraspinatus tendonitis versus mild tear of the supraspinatus). X-ray examination in September 2006 was negative.

Post-service, the Veteran's private treatment records do not reflect any specific treatment for left shoulder pain. An April 2010 treatment record generally noted full range of motion for all major joints except the lumbar spine.

On VA examination in June 2010 VA examination, the Veteran described that, some days, he could hardly lift his left shoulder and other days he can lift it all the way up but with pain. The left shoulder had range of motion from 0 to 160 degrees of flexion, 0 to 120 degrees of abduction, left internal rotation from 0 to 50 degrees and left external rotation from 0 to 90 degrees. The Veteran did not have crepitus, deformity, or tenderness. He did have pain that was intermittent, moderate, and burning but had no limitation of motion or loss of function with flare-ups. The VA examiner diagnosed left shoulder AC separation after taking a history of the Veteran, conducting a physical examination, and taking an x-ray that revealed a left AC joint widened to 7.5mm. 

The Veteran was afforded a VA examination in March 2014 at which time he described left shoulder pain with difficulty raising his arm. He reported flares of pain and tenderness at the AC joint which reduced his ability to lift his arms or carry a load of significant weight. His range of motion for both flexion and abduction was to 90 degrees with pain at 80 degrees. After three repetitions, his range of motion was to 90 degrees for both flexion and abduction; he did not have additional limitations in range of motion after repetitive-use testing. The VA examiner stated that repetitive motion testing was conducted on this Veteran with no appreciable change in strength or range of motion; thus, any statement about how or what the joints function would be during a flare-up would be nothing more than pure speculation. The Veteran did have functional loss and/or functional impairment as manifested by less movement than normal and pain on movement. He also had localized tenderness or pain on palpation of the joints/soft tissue/biceps tendon. He did not have guarding and he had normal muscle strength for abduction and forward flexion. He also did not have anklyosis. He was unable to perform the Hawkins' impingement test and had positive empty-can test and external rotation/infraspinatus strength test; his lift-off subscapularis test was negative. He did not have a history of mechanical symptoms, recurrent dislocation of the glenohumeral joint, and his crack apprehension and relocation test was negative. He did have an AC joint condition that manifested by nonunion of clavicle or scapula with loose movement and there was tenderness on palpation with a positive cross-body adduction test. The Veteran did not have a history of any shoulder surgery. There was no evidence of degenerative or traumatic arthritis noted on x-ray studies. The VA examiner stated that it affected the Veteran's ability to work because any upper body manual labor was painful and impossible at significant weight; even driving a car could be quite painful due to bilateral AC ligamentous laxity and his bilateral rotator cuff syndrome. 

Notably, the available VA clinic records do not reflect any lay or medical evidence of left shoulder motion limited to 25 degrees from side.

In order for the Veteran to warrant a higher initial rating under DC 5201 for his rotator cuff syndrome, there needs to be evidence of motion limited to 25 degrees from the side. However, in March 2014, his range of motion was to 90 degrees for flexion and abduction; the Veteran's pain was at 80 degrees for both flexion and abduction. In addition, after repetitive use there was no appreciable change in range of motion; though it was noted that any statement about functioning during a flare-up would be mere speculation. The Veteran has described times wherein he is hardly able to lift his arm, but he has not described motion limited to 25 degrees from side. Thus, the Board finds that there is no evidence that the Veteran's rotator cuff tear warrants an initial rating in excess of 20 percent under DC 5201. 

The Veteran's service-connected AC joint separation of the left shoulder is already at a 20 percent disability rating under DC 5203; the Board notes that this is the maximum schedular rating allowed under DC 5203. Therefore, a higher initial rating in excess of 20 percent for the service-connected AC joint separation of the left shoulder is not warranted. 

The Board notes that DCs 5200 and 5202 also pertain to the shoulder. However, there is no evidence of ankylosis of the scapulohumeral articulation (DC 5200) or fibrous union of the humerus (DC 5202). Thus, the Board finds that he does not warrant a higher initial rating under any other diagnostic criteria. 

With regard to giving proper consideration to the effects of pain and other symptoms in assigning a disability rating per DeLuca and Mitchell, supra, the reports from the examinations and treatment records document consideration of these principles and there is no indication that higher compensation would be warranted under these principles as such factors do not result in additional functional loss that resulted in a higher limitation of motion. In this respect, the Veteran credibly reports left shoulder pain with crepitus and weakness. His physical examinations, at times, have been significant for slight left shoulder weakness with positive empty can test and external rotation/infraspinatus strength test; he could not perform the Hawkins' test. However, the March 2014 VA examination did not show any additional limitation of motion on repetitive testing. The VA examiner stated that the Veteran's motion has been additionally limited by pain and less movement that normal; however, the preponderance of the evidence establishes that his functional impairment on use does not meet, or more nearly approximate, the criteria for limitation of motion 25 degrees from the side. Notably, the Veteran himself has not described limitation of motion this severe. Rather, the Veteran's describes functional impairments with overhead use and carrying heavy loads, and having some episodes wherein he could hardly lift his arm. Thus, the Board finds that the currently assigned 20 percent disability ratings contemplate any disability due to pain on limitation of motion. 

The Board has carefully reviewed and considered the Veteran's statements regarding the severity of his service-connected left shoulder disabilities. However, as it concerns of the severity of his disability as determined by VA rating criteria, the Board places significantly greater probative value to the medical evidence of record offering detailed specific specialized determinations pertinent to the rating criteria according to specialized education and training. Notably, VA examiners determine range of motion with use of a goniometer and the Veteran has not described limitation of motion of 25 degrees from side, ankylosis, etc., which could support a higher rating still. 

In sum, the Board finds that the Veteran does not warrant initial ratings higher than 20 percent for either the service-connected rotator cuff syndrome or the service-connected AC joint separation of the left shoulder. To the extent that the Board has denied higher ratings for his service-connected left shoulder rotator cuff syndrome and his service-connected AC joint separation of the left shoulder, the Board finds that the preponderance of the evidence is against such claims. As such, the benefit of the doubt doctrine is not applicable. 38 U.S.C.A. § 5107; 38 C.F.R. §§ 4.3, 4.7.


ORDER

An initial schedular evaluation in excess of 20 percent for service-connected rotator cuff tear of the left shoulder is denied. 

An initial schedular evaluation in excess of 20 percent for the service-connected AC joint separation of the left shoulder is denied. 


REMAND

In exceptional cases an extraschedular rating may be provided. 38 C.F.R. § 3.321. The Court has set out a three-part test, based on the language of 38 C.F.R. § 3.321(b)(1), for determining whether a veteran is entitled to an extra-scheduler rating: (1) the established scheduler criteria must be inadequate to describe the severity and symptoms of the claimant's disability; (2) the case must present other indicia of an exceptional or unusual disability picture, such as marked interference with employment or frequent periods of hospitalization; and (3) the award of an extra-scheduler disability rating must be in the interest of justice. Thun v. Peake, 22 Vet. App. 111 (2008), aff'd, Thun v. Shinseki, 572 F.3d 1366 (Fed. Cir. 2009). Where the evaluations provided by the rating schedule are found to be inadequate, an extraschedular evaluation may be assigned commensurate with the veteran's average earning impairment due to the service-connected disorder. Fisher v. Principi, 4 Vet. App. 57, 60 (1993). 

As discussed above, the Veteran's service-connected left shoulder rotator cuff syndrome is rated as 20 percent disabling under DC and his service-connected AC joint separation of the left shoulder is rated as 20 percent disabling under DC 5203. The Board notes that the Veteran is currently in receipt of a TDIU rating based upon multiple service-connected disabilities. 

At the Veteran's March 2014 VA examination, the VA examiner stated that the Veteran's left shoulder disabilities affected his ability to work because any upper body manual labor was painful and impossible at significant weight; even driving a car could be quite painful due to bilateral AC ligamentous laxity and his bilateral rotator cuff syndrome. The Board finds that, though the Veteran does not warrant higher schedular ratings for his service-connected left shoulder rotator cuff syndrome and AC joint separation, a referral of those disabilities to the Director of VA Compensation Service for extraschedular consideration is warranted. The authority to assign extraschedular ratings has been specifically delegated to the Under Secretary for Benefits and the Director of the Compensation and Pension Service, and not the Board, in the first instance. Therefore, the correct course of action for the Board, where it finds that entitlement to an extraschedular evaluation may be present, is to raise the issue and remand it for the proper procedural actions outlined in 38 C.F.R. § 3.321(b)(1). Floyd v. Brown, 9 Vet. App. 88 (1996). 


Accordingly, the case is REMANDED for the following action:

1. Obtain and associate with the claims file all updated VA and private treatment records. 

2. Refer the Veteran's service-connected left shoulder rotator cuff syndrome and his service-connected AC joint separation of the left shoulder to the Director of Compensation and Pension Service pursuant to the provisions of 38 C.F.R. § 3.321(b) for consideration of whether an extraschedular rating is warranted.

3. The RO should review the claims file to ensure that all the foregoing requested development is completed, and, thereafter, arrange for any additional development indicated. The RO should then readjudicate the remaining claims on appeal. If any benefit sought remains denied, the RO should issue an appropriate SSOC and provide the Veteran and his representative the requisite time period to respond. The case should then be returned to the Board for further appellate review, if otherwise in order. No action is required of the appellant unless he is notified. 

The purposes of this remand are to ensure notice is complete, and to assist the Veteran with the development of his claims. The appellant has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999). No action is required of the appellant until further notice. The Board takes this opportunity to advise the appellant that the conduct of the efforts as directed in this remand, as well as any other development deemed necessary, is needed for a comprehensive and correct adjudication of his claims. His cooperation in VA's efforts to develop his claims, including reporting for any scheduled VA examination, is both critical and appreciated. 

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2013).




______________________________________________
T. MAINELLI
Acting Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs